# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JESSE LEE, III,** | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | 2:19-cv-00661-ACA |
| | ] | |
| **SAFE-DRY CARPET AND** | ] | |
| **UPHOLSTERY, et al.,** | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Safe Dry Carpet & Upholstery's ("Safe Dry") motion for summary judgment. (Doc. 42).

Plaintiff Jesse Lee, III, an African American male, worked for Safe-Dry as a sales and service representative for twelve days before Safe-Dry terminated his employment. Mr. Lee asserts his termination was racial discrimination, in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, ("Count One"), and 42 U.S.C. § 1981 ("Count Two"). (Doc. 1). Because Mr. Lee has not presented evidence creating a dispute of material fact about whether Safe Dry's articulated reason for terminating his employment was pretext for racial discrimination, the court **GRANTS** the motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Safe Dry and against Mr. Lee.

I.  **BACKGROUND**

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Safe Dry is a carpet and upholstery cleaning business. (Doc. 52-1 at 1 ¶ 8). In October 2017, Safe Dry hired Mr. Lee as a technician.[1] (Doc. 52-1 at 3 ¶ 17, Doc. 42-3 at 2). Mr. Lee was assigned to shadow technician Cleveland Summerville for his first few days (doc. 43 at 8), and completed three jobs for Safe Dry before being fired twelve days after he was hired (*see* doc. 52-2 at 2 ¶ 12; doc. 49-1 at 91; doc. 43 at 13).

During his short time working for Safe Dry, Mr. Lee arrived on time, did all assignments given to him, and never had an argument with a coworker, manager, or customer.[2] (Doc. 49-5 at 2–3 ¶¶ 5–9). Mr. Lee did, however, complain to Safe Dry's

---

[1] Although Safe Dry's owner states in passing that Safe Dry's technicians are independent contractors (doc. 52-1 at 1 ¶ 8), Safe Dry does not argue Mr. Lee was an independent contractor instead of an employee.

[2] Safe Dry disputes Mr. Lee's testimony that he did all his assigned work, arrived on time, and did not have arguments with coworkers or customers. (Doc. 58 at 2 ¶ 13). In support of that dispute, it points out that Safe Dry's assistant manager told Safe Dry's general manager that a customer had complained about Mr. Lee. (*Id.*). Safe Dry cannot rely on hearsay testimony from the general manager to prove the truth of what the assistant manager told him. *See* Fed. R. Evid. 801(c) (defining hearsay an out of court "statement that . . . a party offers in evidence to prove the truth of the matter asserted"); Fed. R. Evid. 802 (prohibiting the use of hearsay); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1291 n.8 (11th Cir. 2018) (holding that a court cannot rely on hearsay at the summary judgment stage). Even if Safe Dry could rely on that

assistant manager, Chad Donaldson, that a Caucasian technician hired after him was getting more assignments than he was. (Doc. 43 at 9, 13–14; *see* Doc. 49-1 at 27). The complaint arose from a situation with the vans that Safe Dry leases to its technicians to get to and from assignments. (Doc. 49-3 at 4).

According to Safe Dry's owner, in 2017, Birmingham "probably" had four or five vans. (Doc. 49-4 at 19). The week that Mr. Lee finished training and began doing assignments, Safe Dry had six technicians—one more than the number of vans available.[3] (Doc. 42-9 at 1). Each technician is assigned to a specific van that he can use to get to and from assignments. (*Id.* at 22). Although Mr. Lee was leasing

---

hearsay testimony, Mr. Lee has presented an affidavit from the customer attesting that he never complained about Mr. Lee. (Doc. 49-2 at 2–3 ¶¶ 5, 11).

Safe Dry also relies on an affidavit from Mr. Summerville, in which he attests Mr. Lee "came in with a poor attitude and was making untrue accusations of race discrimination against Safe Dry even when he was being trained." (Doc. 53-4). But Mr. Summerville also attests he never told Safe Dry's general manager or owner about Mr. Lee's complaints. (*Id.*; Doc. 60 at 3 (conceding Mr. Summerville "never told Mr. Hendricks that Mr. Lee had a bad attitude or that Mr. Lee was already accusing the company of racism before Mr. Hendricks made the decision to terminate")). Safe Dry cannot establish that Mr. Lee did not arrive on time, complete his assignments, or that he argued with coworkers or customers based on Mr. Summerville's affidavit. Nor can it establish that it believed Mr. Lee was a bad employee based on information Mr. Summerville never relayed to Safe Dry.

[3] Safe Dry disputes that it ever had fewer vans than technicians. (Doc. 58 at 2 ¶ 9). In support, it proffers an affidavit from Safe Dry's owner, Chase Hoagland, who attests that Safe Dry "always had enough vans for technicians because the technicians need a van to be able to do their job. The reason Mr. Lee did not have a van/truck during the brief period of time he worked at Safe Dry is because his van broke down and was in the shop." (Doc. 54 at 1 ¶¶ 3–4). Mr. Hoagland, however, testified during his deposition—conducted before he executed the affidavit—that he did not know Mr. Lee's truck had broken done until Mr. Lee's deposition, when Mr. Lee testified about the breakdown. (Doc. 49-4 at 142). He therefore cannot have any personal knowledge about why Mr. Lee had no van. *See* Fed. R. Civ. P. 56(c)(4). As for his attestation Safe Dry "always" had enough vans for its technicians, Mr. Lee had created a dispute by testifying that on the day his coworker used his van, there was no van available for him to use. (Doc. 43 at 28–30).

a van, on one occasion when he arrived at work, he found that a Caucasian technician hired soon after him (doc. 43 at 9, 11) had taken his van to go on a job Mr. Lee says should have been assigned to him (*id.* at 28–30).

Other than the one day Mr. Lee's coworker used his leased van, Mr. Lee was able to complete three assignments for Safe Dry. (*See* Doc. 46-6). Mr. Lee's second assignment was to clean the couch of a customer named Alvin Richardson. (Doc. 49-1 at 91; Doc. 42-6 at 2). After Mr. Lee worked on Mr. Richardson's couch, Mr. Donaldson reported to Safe Dry's general manager, Kevin Hendricks, that Mr. Richardson had complained about Mr. Lee's service of the couch and his attitude[4] (doc. 49-1 at 111, 113–14, 119–20; doc. 49-6 at 21–23). In fact, Mr. Richardson never complained about Mr. Lee. (Doc. 49-2 at 3 ¶ 11). But based on what Mr. Donaldson told him, Mr. Hendricks concluded that Mr. Lee "did not do quality work, he had a very poor work ethic and also had a very negative attitude towards customers and other Safe-Dry contractors and employees." (Doc. 52-2 at 2

---

[4] Mr. Lee contends the court should exclude evidence about Mr. Richardson's alleged complaint. (Doc. 50 at 33 n.3). As the court explained above, *see supra* at 2–3 n.2, Safe Dry cannot rely on Mr. Hendricks' testimony about what Mr. Donaldson told him to prove Mr. Richardson complained about Mr. Lee or that Mr. Lee actually had a poor work ethic and a bad attitude. *See* Fed. R. Evid. 801, 802; *Yellowfin Yachts, Inc.*, 898 F.3d at 1291 n.8. But it can rely on Mr. Hendricks' testimony to show the effect Mr. Donaldson's statement had on Mr. Hendricks and his belief about whether Mr. Lee was a bad employee. *See United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) ("Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay."); *United States v. Herrera*, 600 F.2d 502, 504 (5th Cir. 1979) (concluding that a witness' description of threats made against her was not hearsay because those threats "were not offered to prove that [the declarant] would actually carry through the threats, but rather to show [the witness]' state of mind in consequence of the statements").

¶ 12; *see also* Doc. 49-1 at 118–19). He therefore terminated Mr. Lee's employment on November 7, 2017. (Doc. 52-2 at 3 ¶ 16; Doc. 43 at 14).

Mr. Donaldson broke the news to Mr. Lee. (Doc. 43 at 26). He told Mr. Lee that the termination was because business was slow. (*Id.*). Mr. Hendricks, however, denies business was slow or that the amount of work available had anything to do with Mr. Lee's termination. (Doc. 49 at 121–22).

After Mr. Lee's cleaning of Mr. Richardson's couch, Safe Dry assigned a Caucasian technician to re-service the couch. (Doc. 49-2 at 2–3 ¶¶ 4–7). The technician cleaned the couch three times but was never able to remove the smell. (Doc. 46-6 at 3–5; Doc. 49-2 at 3 ¶ 7). Safe Dry did not fire that technician. (Doc. 49-2 at 3 ¶ 8; Doc. 50 at 24 ¶ 27; Doc. 58 at 2).

The week that Safe Dry fired Mr. Lee was also the last week another African American technician, Bryan Adams, worked at Safe Dry.[5] (*See* Doc. 42-9 at 1–2; Doc. 49-1 at 168). The following week, Safe Dry hired a Caucasian technician. (Doc. 42-9 at 2). Several weeks later, Safe Dry hired another Caucasian technician. (*Id.*). By the end of November 2017, Safe Dry's Birmingham branch had one African American technician and four Caucasian technicians—down from five

---

[5] Whether Mr. Adams quit or was fired is unclear. Mr. Lee testified that another technician told him that Safe Dry had fired Mr. Adams. (*See* Doc. 43 at 14). Mr. Lee cannot prove that Safe Dry fired Mr. Adams by testifying that someone else told him Safe Dry fired Mr. Adams. *See* Fed. R. Evid. 801(c), 802; *Yellowfin Yachts, Inc.*, 898 F.3d at 1291 n.8. No other evidence in the record establishes why Mr. Adams' employment with Safe Dry ended.

African American technicians and no Caucasian technicians at the beginning of October 2017. (Doc. 42-9 at 1–2).

## II. DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Safe Dry seeks summary judgment on the ground that it had a legitimate, non-discriminatory reason to terminate Mr. Lee because Mr. Donaldson told Mr. Hendricks that a customer had complained about Mr. Lee. (Doc. 44 at 33–34). It also makes lengthy arguments that Mr. Lee cannot establish a disparate impact claim or a claim of discrimination based on Mr. Lee's pay or number of assignments. (*Id.* at 26–32). Because Mr. Lee's only claims are for discriminatory termination under Title VII and § 1981 (*see* doc. 1 at 4–6), and Mr. Lee concedes that he has not asserted a disparate impact claim (*see* doc. 50 at 37–38), the court will address only Safe Dry's argument about its legitimate, non-discriminatory reason for terminating Mr. Lee.

6

Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits intentional discrimination "in private employment on the basis of race." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 4659–60 (1975). As a general rule, claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Both Title VII and § 1981 claims can be proved by presenting "three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Mr. Lee relies on circumstantial evidence to support his claims of racially discriminatory termination.

"A plaintiff may raise a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Mr. Lee relies on the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that test, a plaintiff must first make out a *prima facie* case of discrimination by presenting evidence that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual

7

outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

If the plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to present evidence showing a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the defendant can satisfy that burden, the plaintiff must present evidence from which a reasonable jury could find that the proffered reasons were pretextual. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). To establish that a reason was pretextual, the plaintiff must present evidence that "the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Safe Dry did not argue in its initial brief that Mr. Lee could not satisfy the *prima facie* showing, and Mr. Lee contends that Safe Dry has conceded that point. (Doc. 50 at 3). In its reply brief, Safe Dry argues for the first time that Mr. Lee did not present evidence showing a *prima facie* case of discrimination. (Doc. 58 at 3–5). The court will not consider arguments raised for the first time in a reply brief. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). By not

8

challenging Mr. Lee's ability to establish a *prima facie* case in its initial brief, Safe Dry has waived that argument for summary judgment purposes.

But, proceeding on the assumption that Mr. Lee can establish a *prima facie* case, Safe Dry has articulated a legitimate, non-discriminatory reason for terminating Mr. Lee: that the decisionmaker, Mr. Hendricks, believed Mr. Lee did not do quality work, had a poor work ethic, and had a negative attitude. (Doc. 44 at 33–34). Mr. Lee responds that Safe Dry has not met its burden of production because no evidence supports its contention that a customer or coworker complained about Mr. Lee's performance and Mr. Hendricks lacks any personal knowledge about Mr. Lee's performance, attitude, or work ethic. (Doc. 50 at 26–27).

The employer's burden to articulate a legitimate, non-discriminatory reason for an employment decision is "one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quotation marks omitted) (en banc). Mr. Lee is correct that Safe Dry has not submitted any admissible evidence that he actually had a poor work ethic or that any coworker or customer complained about him. *See supra* at 2–3 n.2 (explaining Mr. Hendricks' testimony about what Mr. Donaldson told him cannot be used to prove a customer or anyone else actually complained about Mr. Lee or that he had a poor work ethic

9

or bad attitude because, if offered for that purpose, the testimony would be inadmissible hearsay). However, Safe Dry has offered admissible evidence that Mr. Hendricks believed Mr. Lee's quality of work and work ethic were poor and that he had a bad attitude with customers because Mr. Donaldson told him a customer had complained about Mr. Lee. (Doc. 49-1 at 111, 113–14, 119–20; Doc. 49-6 at 21–23); *see also supra* at 4 n.4 (explaining that Mr. Hendricks' testimony about what Mr. Donaldson told him is non-hearsay and is admissible to show the effect Mr. Donaldson's statement had on Mr. Hendricks).

Safe Dry has carried its burden of production by articulating a legitimate, non-discriminatory reason for terminating Mr. Lee's employment. *See Chapman*, 229 F.3d at 1024. The burden therefore shifts to Mr. Lee to present evidence from which a reasonable jury could find that the articulated reason is false and pretext for discrimination. *See Smith*, 644 F.3d at 1326; *Springer*, 509 F.3d at 1349. Mr. Lee contends a jury could find the reason false because (1) the reason Mr. Donaldson gave Mr. Lee for his termination—a slowdown of business—was false; (2) Mr. Richardson never complained about Mr. Lee; and (3) a Caucasian technician who was also unable to remove the smell from Mr. Richardson's couch was not fired. (Doc. 50 at 32–34). He argues a jury could find that the true reason for his termination was discrimination because (1) Safe Dry fired him to free up a van for a Caucasian technician hired after him; and (2) Safe Dry started October 2017 with

only African American technicians and ended November 2017 with only one African American technician. (*Id.* at 35–36).

Mr. Lee has not carried his burden of presenting evidence from which a reasonable jury could find that Safe Dry's articulated reason for his termination was false. First, Mr. Lee points to Mr. Donaldson's statement at the time of termination that Safe Dry was firing Mr. Lee because of a slowdown in business, and Mr. Hendricks' later denial that business was slow. (Doc. 50 at 32). Safe Dry has not articulated a slowdown in business as a reason for Mr. Lee's termination. (*See* Doc. 44 at 33–34). But even if it had, Mr. Lee must present evidence that *every* legitimate, non-discriminatory reason articulated by Safe Dry is false. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."). And he cannot carry that burden with respect to Mr. Hendricks' belief about Mr. Lee's work.

The undisputed evidence in this case is that Mr. Donaldson told Mr. Hendricks a customer had complained about Mr. Lee, and as a result Mr. Hendricks believed that Mr. Lee was not performing his job well. (*See* Doc. 49-1 at 111, 113–14, 119–20; Doc. 49-2 at 3 ¶ 11; Doc. 49-6 at 21–23). Although Mr. Donaldson was either lying or mistaken when he made that statement to Mr. Hendricks, neither party has presented any evidence from which a reasonable

jury could conclude that Mr. Hendricks did not believe Mr. Donaldson. And the court's focus is not whether the decisionmaker's reason for the employment decision "is a correct one, but whether it is an honest one."[6] *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *see also Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges. [The courts] are not a 'super-personnel department' assessing the prudence of routine employment decisions, 'no matter how medieval,' 'high-handed,' or 'mistaken.'"); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head.").

Even if Mr. Lee could establish the falsity of Safe Dry's articulated reason for his termination, he has not presented evidence that the real reason was racial discrimination. He argues that a reasonable jury could infer that Safe Dry fired him because it had only enough vans for five technicians, and it wanted to allow a Caucasian technician to use the van that he had leased. (Doc. 50 at 35). That,

---

[6] Mr. Lee has not made a "cat's paw" argument about Mr. Donaldson's motivation for telling Mr. Hendricks that a customer had complained about Mr. Lee. *See Crawford v. Carroll*, 529 F.3d 961, 979 (11th Cir. 2008) ("Under a 'cat's paw' theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct."). But even if he had, he has not presented any evidence that Mr. Donaldson had discriminatory animus.

however, is not a reasonable inference to draw from the evidence presented.  Mr. Lee has certainly presented evidence from which a reasonable jury could find that Safe Dry did not have enough vans for the number of technicians during one week of Mr. Lee's employment.  (*See* Doc. 49-4 at 19; Doc. 42-9 at 1).  He has also presented evidence that on one occasion, a Caucasian coworker used the van Mr. Lee was leasing to go on a job Mr. Lee believed should have been assigned to him.  (Doc. 43 at 9, 11, 28–30).  But he has presented no evidence that Safe Dry allowed or ordered that technician to use the van or, even if it had, why it preferred that technician over him.  A reasonable jury could not infer from the van shortage that racial discrimination motivated Safe Dry's termination of Mr. Lee.

Mr. Lee also contends that a reasonable jury could infer intentional discrimination because in October 2017, all of Safe Dry's technicians at the Birmingham branch were African American, and by the end of November 2017, it had one African American technician and four Caucasian technicians.  (Doc. 50 at 35–36).  But, as the Eleventh Circuit has stated, statistical evidence presented without "any other relevant information, including the number of [people within the protected class] who expressed interest in [the] position[ ]" is not probative of pretext.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004), *abrogated on other grounds by Lewis v. Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).  "Statistics without any analytical foundation are virtually

meaningless." *Id.* (quotation marks omitted). Mr. Lee has not presented any information that would provide context for the change in the number of African American technicians working at the Birmingham branch of Safe Dry in October and November 2017. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) (concluding that information about the number of black supervisors was irrelevant where the plaintiff "provided no other information (*i.e.*, whether any black employees ever applied for supervisory positions) to make this otherwise anecdotal information significant"). A reasonable jury could not infer from that reduction alone that Safe Dry's true reason for terminating Mr. Lee was racial discrimination.

### III.  CONCLUSION

The court **GRANTS** Safe Dry's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Safe Dry and against Mr. Lee on all claims.

The court will enter a separate final judgment consistent with this memorandum opinion and order.

**DONE** and **ORDERED** this October 14, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE